# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17-cr-00122 |
| Plaintiff, | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| DAVIAN WARREN, | ) | **SENTENCING MEMORANDUM** |
| Defendant. | ) | |

## I. INTRODUCTION

On December 16, 2019, this Court conducted a sentencing hearing for Defendant Davian Warren ("Warren"). During the hearing, this Court imposed a sentence of 96 months incarceration. This memorandum serves to supplement this Court's rulings during the sentencing hearing.

## II. SENTENCING PROCESS

Often, criminal sentencing is described as a three-step process. The first step is calculating the advisory sentence guideline range suggested by the United States Sentencing Commission. *See Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, a court must determine the offense level for the crimes for which the defendant has been convicted and determine the defendant's criminal history category. *See United States v. Boyd*, No. 3:07-CR-3, 2008 U.S. Dist. LEXIS 94565, at *43-48 (E.D. Tenn. Nov. 18, 2008).

Second, the court must determine whether a variance or departure from the advisory sentence guideline range would be appropriate. *See United States v. Collington*, 461 F.3d 805, 807-09 (6th Cir. 2006).

For the third and final step,

> a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. 3553(a), a district court may <u>not</u> presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. . . . A district court may "hear arguments by prosecution or defense that the Guidelines sentence should not apply." In this way, a "sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F. Supp. 2d 945, 949 (N.D. Ohio 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007) and citing *United States v. Ross*, 501 F.3d 851, 853 (7th Cir. 2007)).

### III. ANALYSIS

1. <u>Advisory Sentence Guideline Computation</u>

To begin the advisory sentencing guideline computation, this Court determines the offense level for the crimes for which the defendant is presently convicted. On October 2, 2017, Warren pled guilty to Count 1 of the Indictment against him, more specifically, the charge of Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). (*See* Min. of Proceedings, Oct. 2, 2017; PSR ¶ 1, ECF No. 38.) The Indictment charged:

> On or about February 15, 2017, in the Northern District of Ohio, Eastern Division, Davian Warren, having been previously convicted of crimes punishable by imprisonment for a term exceeding one year, those being, Improper Discharge into Habitation with Firearm Specification and Having Weapons Under Disability, in Case Number CR-14-590885-A, in the Cuyahoga County Common Pleas Court, on or about January 23, 2015, and Attempted Felonious Assault with Firearm Specification, in Case Number CR-12-566336-A, in the Cuyahoga County Common Pleas Court, on or about February 14, 2013, did knowingly possess in and affecting interstate commerce firearms, to wit: a Charter Arms Model Pit Bull, .40

caliber revolver, serial number 12-06764, a Sarsilmaz, Model CM9, 9mm pistol, serial number T1102-16BD00379, and ammunition, in violation of Title 18, Section 922(g)(1), United States Code.

(Indictment 1, ECF No. 1. *See also* PSR ¶ 2, ECF No. 38.) Pursuant to § 2K2.1(a)(4) of the sentencing guidelines, which is the appropriate and applicable section of the sentencing guidelines as Warren committed the instant offense subsequent to sustaining one felony conviction of a crime of violence – Case Number CR-12-566336-A: Attempted Felonious Assault with a Firearm Specification – the base offense level for Warren's crime is 20. (*See* PSR ¶¶ 4, 16, ECF No. 38.) This Court granted a three-level reduction pursuant to § 3E1.1 of the sentencing guidelines for acceptance of responsibility, making Warren's offense level 17. (*See id.* at ¶¶ 6, 14, 23, 24.)

With respect to Warren's criminal history category, this Court found Warren's criminal history category to be VI. (*See id.* at ¶¶ 39-41.) The criminal history pertinent to this calculation is as follows:

(1) Case No.: CR-09-520176 – Carrying Concealed Weapons on December 17, 2008 in the Cuyahoga County Court of Common Pleas, sentenced to six months custody. Two points were tallied for this conviction pursuant to § 4A1.1(b) of the sentencing guidelines because this sentence of imprisonment was at least sixty days, but not more than one year and one month. (*Id.* at ¶ 28.)

(2) Case No.: CR-09-521055-A – Failure to Comply to Order/Signal of Police Officer on January 31, 2009, in the Cuyahoga County Court of Common Pleas, sentenced to six months custody. Two points were tallied for this conviction pursuant to § 4A1.1(b) of the sentencing guidelines because this sentence of imprisonment was at least sixty days, but not more than one year and one month. (*Id.* at ¶ 29.)

(3) Case No.: CR-10-536470-A – Attempted Trafficking Offenses on April 11, 2010, in the Cuyahoga County Court of Common Pleas, sentenced to one hundred twenty days custody, which

was suspended. One point was tallied for this conviction pursuant to § 4A1.1(c) of the sentencing guidelines because this sentence of imprisonment was less than sixty days. (*Id.* at ¶ 30.)

(4) Case No.: 10 CRB 01586 – Possession of Drugs on September 24, 2010, in the Bedford Municipal Court, sentenced to ninety days custody. Two points were tallied for this conviction pursuant to § 4A1.1(b) of the sentencing guidelines because this sentence of imprisonment was at least sixty days, but not more than one year and one month. (*Id.* at ¶ 32.)

(5) Case No.: CR-10-544741-A – Safecracking and Breaking & Entering on November 30, 2010, in the Cuyahoga County Court of Common Pleas, sentenced to ten months custody for Safecracking, and eight months custody for Breaking & Entering to run concurrently. Two points were tallied for this conviction pursuant to § 4A1.1(b) of the sentencing guidelines because this sentence of imprisonment was at least sixty days, but not more than one year and one month. (*Id.* at ¶ 34.)

(6) Case No.: CR-12-566336-A – Two counts of Attempted Felonious Assault with a Firearm Specification on August 24, 2012, in the Cuyahoga County Court of Common Pleas, sentenced to a total of one year and nine months custody. Although each count carried a mandatory one year term of custody due to the firearm specification, the individual firearm specifications merged under Ohio law for a total one year term of custody. Additionally, although each underlying count of attempted felonious assault resulted in a nine month sentence, the sentences merged under Ohio law for a total nine month term of custody. Therefore, despite being charged and sentenced for each count, Warren was only required to serve a total of one year and nine months custody, rather than one year and nine months custody for each count.

Given this information, four total points were tallied for this conviction. Three points were tallied for this conviction pursuant to § 4A1.1(a) of the sentencing guidelines because this sentence

of imprisonment was more than one year and one month with an additional point tallied pursuant to § 4A1.1(e) of the sentencing guidelines since both convicted crimes of violence resulted in one single sentence, rather than two separate sentences that could be scored separately under the sentencing guidelines. (*Id.* at ¶ 35.)

(7) Case No.: CR-14-585985-A – Attempted Trafficking Offense on May 29, 2014, in the Cuyahoga County Court of Common Pleas, sentenced to thirty-six days custody. One point was tallied for this conviction pursuant to § 4A1.1(c) of the sentencing guidelines because this sentence of imprisonment was less than sixty days. (*Id.* at ¶ 36.)

(8) Case No.: CR-14-590885-A – Discharge of Firearm on or Near Prohibited Premises and Having Weapons While Under Disability on October 31, 2014, in the Cuyahoga County Court of Common Pleas, sentenced to twenty-one months custody. Three points were tallied for this conviction pursuant to § 4A1.1(a) of the sentencing guidelines because this sentence of imprisonment was more than one year and one month. (*Id.* at ¶ 38.)

Given the points tallied for each of these convictions, the total points scored was 17. (*See id.* at ¶ 39.) In addition, two additional points were added pursuant to § 4A1.1(d) of the sentencing guidelines because the instant offense was committed while on post release control for Case No.: CR-14-590885-A. (*See id.* at ¶ 40.) Therefore, the total criminal history score is 19, establishing a criminal history category of VI for Warren pursuant to the sentencing table in Chapter 5, Part A of the sentencing guidelines. (*See id.* at ¶ 41.)

Following the sentencing table, with an offense level of 17 and a criminal history category of VI, this Court determined the advisory sentence guideline range to be 51-63 months imprisonment. (*See id.* at ¶ 64.)

2. <u>Variance Analysis</u>

Prior to the December 16, 2019 sentencing hearing for Warren, this Court gave notice to the parties of a possible upward variance. (Order, ECF No. 57.) Consistent with 18 U.S.C. § 3661, which states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," this Court considered the following when determining whether an upward variance was necessary.

As set forth in the Presentence Investigation Report ("PSR"), regarding the instant offense, on February 15, 2017,

> Officers of the Gang Impact Unit of Cleveland, Ohio, were proactively patrolling an area high in violent crimes. While patrolling the area of East 102nd Street and Lamontier Avenue, officers received a broadcast of "shots fired" in the area of East 97th Street and Lamontier. Officers observed a vehicle parked and running in the middle of East 97th Street. The vehicle was impeding the flow of traffic and operating with disregard. Officers observed a male, later identified as Davian Warren, quickly walk away from the driveway in the area of 2982 East 97th Street holding the front of his waistband with both hands and looking around in a scanning manner. Warren entered the vehicle that was running on East 97th Street and left. The vehicle turned without using a turn signal and a traffic stop was initiated. The driver of the vehicle was Brian Warren and the passenger was Davian Warren. Officers could smell marijuana emanating from the vehicle as they approached.
>
> When officers approached the driver's side of the vehicle they observed a partially concealed semi-automatic handgun sticking out from Brian Warren's lap. The passenger, Davian Warren, was instructed not to move and keep his hands up. It was at that time that officers observed the butt of a semi-automatic handgun sticking out from in between his legs.
>
> Davian Warren was in possession of a Sarsilmaz 9mm pistol loaded with 11 rounds of 9mm ammunition between his legs. The Charter Arms .40 caliber revolver loaded with 5 rounds of .40 caliber ammunition was found in his waistband. Both firearms and all the ammunition were manufactured outside the State of Ohio and moved in interstate or foreign commerce.

(PSR ¶¶ 9-11, ECF No. 38.)

In addition to this information regarding Warren's instant offense, and the circumstances leading to the instant offense, this Court notes that Warren has had firearm related offenses and offenses tangentially related to firearm activity since 2008 – specifically, Warren has spent the better part of the last decade either serving sentences for firearm related offenses, being investigated for firearm related offenses, or otherwise involving himself with firearms.

Warren's first firearm related offense occurred on December 17, 2008. (*Id.* at ¶ 28.) On that day, Cleveland police officers observed Warren driving a vehicle near Lamontier Avenue in Cleveland, Ohio when he failed to stop at a stop sign. (*Id.*) When the officers initiated the traffic stop, Warren and his passenger attempted to flee on foot but, ultimately, both individuals were apprehended. (*Id.*) The officers discovered two handguns in the vehicle from which they fled, and Warren was ultimately charged with Carrying a Concealed Weapon. (*Id.*) He was released from custody for this offense into post release control on March 2, 2010. (*Id.*)

On April 11, 2010, a mere thirty-nine days after his release from custody, and while still on post release control, Cleveland police officers were investigating Warren in connection with a shooting when they discovered Warren with "several individual[ly] wrapped bags of marijuana in his possession." (*Id.* at ¶ 30.) This offense occurred at East 102nd Street and Lamontier Avenue in Cleveland, Ohio. (*Id.*) Warren was charged with Attempted Trafficking Offenses and was placed on probation for one year. (*Id.*)

A little less than five months into his probationary period for the drug related offense, Warren was charged with Possession of Drugs in the Bedford Municipal Court – his second drug related offense in less than six months. (*Id.* at ¶ 32.) A mere two months later, and approximately seven months after beginning probation for his first drug related offense, Warren was charged with Safecracking and Breaking and Entering. (*Id.* at ¶ 34.) This charge was a violation of Warren's

probation, which was terminated, and Warren was sentenced to ten months custody for the Safecracking charge and eight months custody for the Breaking and Entering charge, to run concurrently. (*Id.* at ¶¶ 30, 34.) Warren was released from custody into post release control on September 27, 2011. (*Id.* at ¶ 34.)

Within a year of his release, notably while still on post release control, Warren was back before the Cuyahoga County Court of Common Pleas for two counts of Attempted Felonious Assault. (*Id.* at ¶¶ 34-35.) On August 13, 2012, Warren fired a shotgun at an individual, striking him, which resulted in serious injury requiring hospitalization. (*Id.*) This offense also occurred on Lamontier Avenue in Cleveland, Ohio. (*Id.*) Warren was sentenced to one year and nine months custody and three years of post release control. (*Id.*)

Thereafter, on May 29, 2014, likely within days of his release from custody,[1] Warren was again arrested for a drug related offense. (*Id.* at ¶ 36.) Warren was found to be in possession of marijuana and was sentenced to thirty-six days custody. (*Id.*) Because Warren was given credit for time served, he was released from custody on July 3, 2014. (*Id.*)

Less than four months later, on October 31, 2014, Warren was again involved in firearm related offenses. (*Id.* at ¶ 38.) Once again, on Lamontier Avenue in Cleveland, Ohio, Warren discharged a firearm. (*Id.*) This time, he shot at a vehicle which was occupied by two of his sisters and one of his nieces. (*Id.*) Warren was charged with Discharge of a Firearm on or Near Prohibited Premises and Having Weapons While Under Disability. (*Id.*) He was again sentenced to one year and nine months custody and three years of post release control. (*Id.*)

---

[1] Although Warren's exact date of release from prison is unknown, given the August 13, 2012 incident date of the Attempted Felonious Assault, the August 24, 2012 arrest date, the February 14, 2013 sentencing date, the Cuyahoga County Court of Common Pleas' credit to Warren of 177 days of jail time, and the fact that Warren was subsequently arrested on May 29, 2014 for Attempted Trafficking, this Court reasonably assumes that Warren was released from prison in May 2014 – one year and nine months from August 2012. *See State of Ohio v. Warren*, Cuyahoga C.P. No. CR-12-566336-A (August 24, 2012); *State of Ohio v. Warren*, Cuyahoga C.P. No. CR-14-585985-A (May 29, 2014).

On July 28, 2016, Warren began his post release control. (*Id.*) Less than seven months later, again, while on post release control, Warren committed the instant offense – which is also firearm related and also occurred on Lamontier Avenue in Cleveland, Ohio. (*Id.* at ¶¶ 9-11. *See also id.* at ¶ 38 (discussing the violation of post release control for carrying a concealed weapon, for which Warren was sanctioned 180 days by the Cuyahoga County Court of Common Pleas on March 20, 2017).)[2]

Given this detailed framework, it is clear to this Court that Warren refuses to stop possessing firearms and ammunition. In addition, it is clear to this Court that, despite multiple arrests and serving various sentences, Warren refuses to stop engaging in other illegal activity as well, including possessing marijuana. To be clear, nearly continually since December 2008, Warren has either been in custody, on post release control, or the subject of an investigation – most of which is firearms related.

But Warren's refusal to stop engaging in illegal activity, including illegally possessing firearms, while obviously a concern, is not his most concerning behavior. The most concerning behavior to this Court is that Warren discharges the firearms he is illegally possessing at other human beings, including his own family members, in clear disregard for the sanctity of human life. Warren's behavior is nothing short of blatantly violent. Given his extensive history with firearm possession, Warren's refusal to stop possessing firearms despite being admonished for illegally possessing firearms by courts in the past, the pattern of Warren's illegal conduct involving firearms and illegal drugs, and the violent conduct he engages in against other human beings, this Court finds that an upward variance to 96 months is the only sentence that is sufficient, but not greater than necessary, for Warren.

---

[2] A full description of Warren's criminal history, as set forth in the PSR, is attached as Exhibit A.

3. 18 U.S.C. § 3553(a) Factors

   a) **Nature and Circumstances of the Offense and the History and Characteristics of Warren**

When determining which sentence is sufficient, but not greater than necessary, pursuant to 18 U.S.C. § 3553(a)(1), this Court must consider the nature and circumstances of the instant offense along with the history and characteristics of Warren. While the specific details of Warren's instant offense and Warren's criminal history, including his history with firearms, are laid out in detail in the previous section, this Court notes that Warren is not simply an individual who refuses to stop possessing firearms and ammunition. Warren is an individual who, while possessing firearms, engages in violent, dangerous, and unlawful conduct.

Specifically, the offense conduct currently at issue is not just illegally possessing a firearm. The narrative from the Cleveland police officers includes information that the officers received a broadcast of shots fired in the area that Warren was located and additionally they smelled marijuana "emanating" from the vehicle Warren occupied while illegally possessing a firearm. Even if Warren was not the individual who fired shots, and even if Warren was not the individual smoking marijuana, the facts remain that Warren was in possession of a loaded firearm while he knew he was prohibited from possessing a firearm, and he was occupying a vehicle that was "emanating" the smell of marijuana. The simple combination of being in a vehicle with illegal drugs and loaded weapons is "just begging for something violent or dangerous to happen." *United States v. Madgett*, 760 F. App'x 466, 468 (7th Cir. 2019). This behavior puts the general public, and Warren himself, at great risk. Not to mention, Warren engaged in this unlawful activity knowing that he was under post release control for a prior charge involving a firearm.

Furthermore, it is this Court's position that the calculated guideline sentencing range does not fully reflect Warren's personal characteristics. The points scored under the sentencing guidelines

consider the length of previous sentences imposed against Warren for calculation purposes. But this Court must consider Warren's characteristics, which can only be demonstrated by his conduct, not a math equation. Warren's conduct over the past decade is discussed in great detail in the previous section. By way of summary, Warren has been the subject of shooting investigations, has been convicted of illegally possessing and carrying loaded weapons, has been convicted of possessing illegal drugs, has shot a man with a shotgun resulting in serious injury requiring hospitalization, and has shot at a vehicle occupied by his sisters and niece. This consistent pattern of behavior is demonstrative of Warren's personal characteristics, including his violent tendencies.

Even after his arrest for the instant offense, Warren has continued to demonstrate his violent proclivities. On September 3, 2017, while in prison, Warren assaulted his brother, Brian Warren, so severely that Brian Warren was left a quadriplegic. (*See generally* PSR Attachment, ECF No. 38-1.) Then again on October 29, 2019, Warren and another inmate engaged in a fist fight. (USM Incident Report, ECF No. 56.) Although Warren argues that both of these instances were instances of mutual combat, the legality of the conduct is not the issue. The violent nature of Warren's conduct is what this Court must consider.

This pattern of behavior demonstrates that Warren continues to engage in the same course of conduct that has resulted in his incarceration in the past, which should be taken into account when sentencing, even if not for his personal characteristics, for the need to protect the public, as will be discussed below. "Post-conviction conduct is a proper 3553(a) factor" which has been held by the Sixth Circuit Court of Appeals to be "a proper basis for an upward variance." *United States v. Sharrak*, 527 F. App'x 383, 389 (6th Cir. 2013) (citing *United States v. Barnett*, 460 F. App'x 582, 589 (6th Cir. 2012); *United States v. Ragland*, 226 F. App'x 507, 511 (6th Cir. 2007) (upholding an upward sentencing variance that considered post-conviction conduct of assault while stating

that the extent of the injuries as a result of the assault are not what was at issue, but rather the "consistent pattern of violent conduct" concerned the court, resulting in an upward variance)).

Given the conduct of the underlying offense, coupled with Warren's conduct while committing previous offenses, and the violent behavior he continues to engage in even while in custody, it is clear to this Court that Warren is undeterred from not only possessing firearms but possessing firearms while under court supervision, firing the firearms he possesses at other human beings, possessing drugs, and engaging in extreme, violent behavior against other human beings. It is clear from the nature of circumstances of the underlying offense and the history and characteristics of Warren that he will not stop engaging in unlawful behavior that puts himself, those closely associated with him, and the general public at risk.

b) **Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and to Protect the Public**

This Court finds that Warren's pattern of unlawful behavior involving firearms, drugs, and violence over the past decade, his unwillingness to be deterred from possessing firearms or engaging in unlawful behavior, the likelihood of recidivism given his inclination to engage in unlawful behavior even while on post release control, and his continual violent behavior even while in custody, reflect the need for the sentence imposed.

Furthermore, the 96 month sentence reflects the seriousness of the offense and promotes respect for the law, as this is Warren's fourth firearm related offense since 2008 – two of which involved discharging his firearm at other human beings. Additionally, this offense occurred while Warren was on post release control for a firearm related offense where he discharged his firearm at a car that his two sisters and one niece were occupying – demonstrative that Warren either refuses to acknowledge or does not understand the seriousness of carrying a firearm, let alone

carrying a firearm illegally. This sentence also provides just punishment and affords adequate deterrence all while avoiding an unwarranted sentencing disparity as previous sentences for lesser amounts of time clearly have not impressed upon Warren the seriousness of his unlawful activity and the consequences it espouses. The fact remains, since 2008, Warren has spent little time without a pending criminal charge, without serving a sentence, or without being on post release control. Warren is undeterred from engaging in criminal conduct that puts himself and the public in danger.

This Court would like to specially note that this sentence will protect the public – a public that is suffering from seemingly constant gun violence. It is noteworthy that in 2017, Cleveland, Ohio had 681 reported cases of felonious assaults with a firearm. *See* Jordan Vandenberge & Mark Ackerman, *Cleveland Crime Data Shows the Progress, Challenges That City, Community Leaders Face*, News 5 Cleveland (Oct. 8, 2019, 2:53 PM) https://www.news5cleveland.com/cleveland-2019-shootings-heat-map-shows-where-most-shootings-happened-this-year. The number of felonious assault with a firearm cases in Cleveland grew to 788 in 2018 with Cleveland having an average of 769 reports of felonious assault with a firearm over the past four years. *Id.* Even the officers that ultimately arrested Warren for the underlying offense acknowledged that they were patrolling the area where Warren was arrested because it is high in violent crimes. (PSR ¶ 9, ECF No. 38.)

All four firearms related charges that Warren has faced occurred near Lamontier Avenue in Cleveland, Ohio – notably the street where Warren lives. In a city that is plagued with gun violence and in an area of the city that already experiences violent crimes, Warren continues to not only illegally possess firearms, but he discharges those firearms at others. Of course, this Court acknowledges that Warren's instant offense is not felonious assault with a firearm. However, this

Court has already pointed out that Warren's conduct during the commission of the instant offense included possessing a loaded firearm while in a vehicle that was "emanating" the smell of marijuana in a neighborhood that is high in violent crimes. It is not a stretch of the imagination, particularly with an individual who has discharged weapons at other human beings in the past, that Warren was engaged in behavior that was "just begging for something violent or dangerous to happen." *Madgett*, 760 F. App'x at 468. The sentence imposed by this Court protects this public by removing one individual illegally possessing firearms who has recklessly discharged firearms at other human beings in the past from the fray.

### c) Need to Avoid Unwarranted Sentencing Disparities

Finally, pursuant to 18 U.S.C. 3553(a)(6), this Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" when considering the sentence to be imposed. According to the United States Sentencing Commission data compilations, the national average sentence for defendants with offenses under § 2K2.1 of the sentencing guidelines with criminal history category of VI is 77 months. The Court varied up from both the advisory sentence guideline range and the national average to sentence Warren to the 96 month sentence, which is less than the statutory maximum 120 month sentence available pursuant to 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). This Court acknowledges that this sentence is roughly one and one-half times the advisory sentence guideline range, and higher than the national average, but the math alone does not necessarily make this sentence fall into the category of an unwarranted sentencing disparity when taking the entirety of the above discussion into account.

Understanding, of course, that "[f]or a sentence to the substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and the offender, and sufficient

but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)) (internal quotation marks omitted). A sentence is unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)).

When a district court imposes a sentence outside the advisory sentence guideline range specifically, the court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). In that vein, "the greater the district court's variance, the more compelling the evidence must be." *United States v. Stall*, 581 F.3d 276, 281 (6th Cir. 2009).

This Court believes that the 96 month sentence is substantively reasonable and sufficient, but not greater than necessary, and does not create an unwarranted sentencing disparity because Warren has set himself apart from other offenders in his criminal category. To be clear, Warren's storied history with firearm possession, repeat drug related offenses, two instances of discharging a firearm at other human beings, including his own family members, and continued violent behavior even while in custody are not "problem[s] common to all" individuals before this Court on charges of Felon in Possession of Firearm and Ammunition. *See United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007). It is Warren's personal characteristics, which certainly are not a problem common to all, that give this Court pause. Warren continues to engage in criminal activity, specifically illegally possessing firearms, that puts himself and the public at risk, despite serving multiple sentences for the same or similar conduct. Warren is an individual who refuses to be

deterred from possessing firearms. But deterrence from possession is not the only issue. Warren also continues to engage in violent behavior that results in severe injury to those he acts against. The public must be protected.

It is this Court's belief that a sentence within the advisory sentence guideline range will not adequately deter Warren, will not impress upon Warren the need to respect the law, and will not properly protect the public from Warren. The Court feels this is particularly true since Warren has either been in custody or on post release control for firearm related offenses almost continually for the past decade, but steadfastly refuses to stop possessing firearms, to stop engaging in violent behavior, and to stop engaging in other unlawful activity which ultimately puts the public at great risk.

### IV. CONCLUSION

Therefore, for all of the reasons enumerated throughout this memorandum and those stated on the record during Warren's sentencing hearing, this Court imposed a total sentence of 96 months incarceration. All other terms and conditions of Warren's sentence were stated on the record and will not be reiterated herein.

IT IS SO ORDERED.

DATE: January 6, 2020 /s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT